**Amy GRANAT, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**No. 2:15–cv–00605–MCE–DB**

United States District Court, E.D. California.

Signed 03/01/2017

Filed 03/02/2017

---

Damien Michael Schiff, Theodore Cirilo Hadzi–Antich, Pacific Legal Foundation, Sacramento, CA, for Plaintiffs.

Davene Dashawn Walker, John Tustin, U.S. Department of Justice Environment and Natural Resources Divison Natural Resources Section, Washington, DC, Lynn Trinka Ernce, United States Attorney's Office, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR.,
UNITED STATES DISTRICT JUDGE

Plaintiffs Amy Granat, Corky Lazzarino, the Sierra Access Coalition, the California Off–Road Vehicle Association, and the Counties of Butte and Plumas filed this action against numerous federal defen-

dants challenging the United States Forest Service's 2010 decision to close hundreds of miles of roads in the Plumas National Forest to motorized vehicles. Presently before the Court are Plaintiffs' Motion for Summary Judgment ("MSJ") and Defendants' Cross-Motion for Summary Judgment. ECF Nos. 31, 37.[1] For the following reasons, Plaintiffs' motion is DENIED and Defendants' motion is GRANTED.[2]

## BACKGROUND

In 2005, the U.S. Forest Service issued the Travel Management Rule. Travel Management, 70 Fed. Reg. 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. pts. 212, 251, 261, 295). Relevant to the current litigation, that rule requires the Forest Service to designate a system of roads, trails, and areas open to motor vehicle use by vehicle type and time of year. 36 C.F.R. § 212.50(a). "After these roads, trails, and areas are designated, motor vehicle use, including the class of vehicle and time of year, not in accordance with these designations is prohibited. . . ." Id.

Prior to the enactment of the Travel Management Rule, Plumas National Forest contained approximately 4,267 miles of routes that were designated as part of the National Forest Transportation System ("NFTS"): 4,137 miles of National Forest Service roads and 130 miles of National Forest Service motorized trails. PLU–B–000053.[3] The Forest also contained user-created routes. The Forest Service identified approximately 1,107 miles of such

routes. PLU–B–000052. In December 2006, the Forest Service closed Plumas National Forest to cross-country motor vehicle travel—including on the user-created routes—while it began implementing the portions of the Travel Management Rule relevant to this lawsuit. PLU–C–002315.

The Forest Service held a series of public workshops and public meetings, as well as solicited public comment, to help determine which of the user-created routes should be added to the NFTS. See PLU–B–000058 to –000059. By April 2007, the Forest Service completed a "first cut" route map, consisting of 220 miles of routes. PLU–B–000058. The Forest Service then held another series of public meetings and workshops, allowing the public to identify routes to be considered for inclusion in the NFTS, leading the Forest Service to expand its consideration to 410 miles of routes. PLU–B–000058, –000081.

In December 2008, the Forest Service released its Draft Environmental Impact Statement ("DEIS"). PLU–B–000649. After another period of public comments, the Forest Service released its Final Environmental Impact Statement ("FEIS") in August 2010. PLU–B–000039. Those documents considered four action alternatives in detail for potential additions to the NFTS, as well as a no-action alternative. On August 30, 2010, the Forest Service released the Record of Decision, which selected Action Alternative 5 from the evaluated alternatives. PLU–B–000014 to –

---

1. Defendants also made a Motion to Strike declarations filed by Plaintiffs in support of their MSJ. ECF No. 36. They argue that the declarations constitute improper attempts to supplement the administrative record. Defs.' Mem. in Supp. of Mot. to Strike, ECF No. 36–1, at 2. Plaintiffs, for their part, argue that the declarations establish standing to challenge the Defendants' actions. Pls.' Resp. to Mot. to Strike, ECF No. 39, at 1. The Court acknowledges Plaintiffs' standing argument and disregards the declarations for any other purpose.

2. Because oral argument would not have been of material assistance in rendering a decision, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

3. All citations to the administrative record lodged with the Court are specified following the format used by the parties: "PLU–[volume]–[bates number]."

000016, –000028. The decision added 234 miles of motorized trails to the extant 130 miles of motorized trails. PLU–B–000017 to –000018.

On March 18, 2015, Plaintiffs filed the instant suit, challenging the procedures used to implement the resultant Motorized Travel Management Plan. Compl., ECF No. 1. Plaintiffs are individuals who visit Plumas National Forest, as well as organizations that represent visitors to the Forest. Plaintiff Amy Granat has visited the Forest since 2001. Decl. of Amy Granat, ECF No. 31–4, ¶ 15. She suffers from a disability that limits her ability to walk, and alleges that the Motorized Travel Management Plan drastically reduced her ability to enjoy the Forest by limiting the areas she can reach by motor vehicle. Id. ¶¶ 15–16. Plaintiff Corky Lazzarino also visits Plumas National Forest, and claims that the Motorized Travel Management Plan limits her ability to access parts of the Forest she previously enjoyed. Decl. of Corky Lazzarino, ECF No. 31–5, ¶¶ 9–10. Plaintiff California Off–Road Vehicle Association ("CORVA") is a non-profit corporation, whose members have been prevented from using user-created routes that were not added to the NFTS for motorized recreation. Decl. of Granat, ¶¶ 2, 7. Plaintiff Sierra Access Coalition is an organization representing its members who previously used routes that were not added to the NFTS. Decl. of Lazzarino, ¶¶ 3, 5.

Plaintiffs also include two governmental bodies: Plumas County and Butte County. Approximately 975,000 acres of the Plumas National Forest are located within Plumas County, while approximately 100,000 acres are located within Butte County. Decl. of Robert Armand Perreault, Jr., ECF No. 31–6, ¶ 4; Decl. of John Michael Crump, ECF No. 31–3, ¶ 4. Both claim that the Motorized Travel Management Plan limits the ability of their citizens to access Plumas National Forest. Decl. of Perreault, ¶ 5; Decl. of Crump, ¶ 5. Plumas County also claims the Motorized Travel Management Plan reduces tourism and thereby harms its citizens who rely on tourism for income, as well as the County's own tax revenues on that income. Decl. of Perreault, ¶ 6.

Defendants are the U.S. Department of Agriculture, the U.S. Forest Service (a subdivision of the Department of Agriculture), and various officers of the Department of Agriculture and Forest Service in their official capacities.

## PROCEDURAL FRAMEWORK

■■ Congress enacted NEPA in 1969 to protect the environment by requiring certain procedural safeguards before an agency takes action affecting the environment. The NEPA process is designed to "ensure that the agency . . . will have detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience." Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998) (alterations in original) (quoting Robertson v. Methow Valley Citizens, 490 U.S. 332, 349, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)). The purpose of NEPA is to "ensure a process, not to ensure any result." Id. "NEPA emphasizes the importance of coherent and comprehensive upfront environmental analysis to ensure informed decision-making to the end that the agency will not act on incomplete information, only to regret its decision after it is too late to correct." Ctr. for Biological Diversity v. U.S. Forest Serv., 349 F.3d 1157, 1166 (9th Cir. 2003). Complete analysis under NEPA also assures that the public has sufficient information to challenge the agency's decision. Methow Valley Citizens, 490 U.S. at 349, 109 S.Ct. 1835;

Idaho Sporting Cong. v. Thomas, 137 F.3d 1146, 1151 (9th Cir. 1998).

NEPA requires that all federal agencies, including the Forest Service, prepare a "detailed statement" that discusses the environmental ramifications, and alternatives, to all "major Federal Actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). An agency must take a "hard look" at the consequences, environmental impacts, and adverse environmental effects of a proposed action within an environmental impact statement ("EIS"), when required. Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

 Given its status as a statutory scheme safeguarding procedure rather than substance,[4] NEPA does not mandate that an EIS be based on a particular scientific methodology, nor does it require a reviewing court to weigh conflicting scientific data. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 986 (9th Cir. 1985). An agency must be given discretion in relying on the reasonable opinions of its own qualified experts, even if the court might find contrary views more persuasive. See, e.g., Kleppe, 427 U.S. at 420, n.21, 96 S.Ct. 2718. NEPA does not allow an agency to rely on the conclusions and opinions of its staff, however, without providing both supporting analysis and data. Idaho Sporting Cong., 137 F.3d at 1150. Credible scientific evidence that contraindicates a proposed action must be evaluated and disclosed. 40 C.F.R. § 1502.9(b).

 Because NEPA itself contains no provisions allowing a private right of action, see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), a party can obtain judicial review of alleged violations of NEPA only under the waiver of sovereign immunity contained within the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Earth Island Inst. v. U.S. Forest Serv., 351 F.3d 1291, 1300 (9th Cir. 2003).

 Under the APA, the court must determine whether, based on a review of the agency's administrative record, agency action was "arbitrary and capricious," outside the scope of the agency's statutory authority, or otherwise not in accordance with the law. Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994). Review under the APA is "searching and careful." Ocean Advocates v. U.S. Army Corps of Engineers, 361 F.3d 1108, 1118 (9th Cir. 2004). However, the court may not substitute its own judgment for that of the agency. Id. (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

 In reviewing an agency's actions, then, the standard to be employed is decidedly deferential to the agency's expertise. Salmon River, 32 F.3d at 1356. Although the scope of review for agency action is accordingly limited, such action is not unimpeachable. The reviewing court must determine whether there is a rational connection between the facts and resulting judgment so as to support the agency's determination. Balt. Gas and Elec. v. Nat'l Res. Def. Council, Inc., 462 U.S. 87, 105–06, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983) (citing Bowman Trans. Inc. v. Ark.– Best Freight Sys. Inc., 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). An agency's review is arbitrary and capricious if it fails to consider important aspects of the

4. The National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–14, provides for substantive, as opposed to procedural protection with regard to actions that affect the environment. Plaintiffs have not alleged any violation of the NFMA through this lawsuit.

issues before it, if it supports its decisions with explanations contrary to the evidence, or if its decision is either inherently implausible or contrary to governing law. Lands Council v. Powell, 395 F.3d 1019, 1026 (9th Cir. 2005).

## STANDARD

Summary judgment is an appropriate procedure in reviewing agency decisions under the dictates of the APA. See, e.g., Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471–72 (9th Cir. 1994). Under Federal Rule of Civil Procedure 56, summary judgment may accordingly be had "where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute." Id. at 1472. In cases involving agency action, however, the court's task "is not to resolve contested facts questions which may exist in the underlying administrative record," but rather to determine whether the agency decision was arbitrary and capricious as defined by the APA and discussed above. Gilbert Equip. Co. v. Higgins, 709 F.Supp. 1071, 1077 (S.D. Ala. 1989); aff'd, 894 F.2d 412 (11th Cir. 1990); see also Occidental Eng'g Co. v. Immigration & Naturalization Serv., 753 F.2d 766, 769 (9th Cir. 1985). Consequently, in reviewing an agency decision, the court must be "searching and careful" in ensuring that the agency has taken a "hard look" at the environmental consequences of its proposed action. Ocean Advocates v. U.S. Army Corps of Eng'rs, 402 F.3d 846, 858–59 (9th Cir. 2005); Or. Nat. Res. Council v. Lowe, 109 F.3d 521, 526 (9th Cir. 1997).

## ANALYSIS

Plaintiffs make several challenges to the Motorized Travel Management Plan, claiming that Defendants violated NEPA, the Travel Management Rule, or otherwise acted arbitrarily and capriciously. The Court addresses each in turn.

### A. Defendants' "First Cut" Did Not Violate NEPA or the Travel Management Rule

■ Plaintiffs first challenge Defendants' so-called "first cut," claiming that the initial rejection of 697 miles of the unauthorized trails violates NEPA's "rule of reason" and ignores factors enumerated in the Travel Management Rule. See Pls.' Resp. & Reply, ECF No. 38, at 1–3 (citing Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 767, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004)). Plaintiffs, however, fail to demonstrate why Defendants' approach was unreasonable and misconstrue the Travel Management Rule.

Plaintiffs challenge the sufficiency of the data Defendants used in performing their "first cut." Pls.' MSJ, at 12. They complain that "[o]nly 410 of the unclassified miles ... received any on-site environmental impacts review." Id. Thus, they conclude, "the Forest Service ignored its duties to identify, evaluate, and disclose on-site conditions before determining whether the routes actually met the environmental and recreational criteria of the Travel Management Rule." Id. at 13. It is unclear, however, what exactly Plaintiffs would deem sufficient. They reject Defendants' contention that they are "demand[ing] that every inch of all 1,107 miles of the Plumas National Forest's non-system routes be analyzed for inclusion in the [NFTS]," and instead object to the fact that Defendants "fail[ed] to verify on the ground its resource and access analyses for any of the some 700 miles of non-system routes that the project shut down." Pls.' Resp. & Reply, at 1–3. Plaintiffs do not, however, provide any suggestion as to how much "on the ground" verification would have been sufficient, and fail to demonstrate that additional verification would have provided any information relevant to the project. The rule of reason analysis is "a pragmatic judgment whether

the EIS's form, content[,] and preparation foster both informed decision-making and informed public participation." Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953, 960 (9th Cir. 2005) (quoting California v. Block, 690 F.2d 753, 761 (9th Cir. 1982)). Thus, a successful challenge to Defendants' actions here must do more than merely identify the miles that did not receive on-site analysis and claim that Defendants did not perform sufficient verification of "any" of those miles.

Defendants populated their inventory of routes by relying on "previous records," such as "maintenance plans, maintenance expenditures, existing road and trail atlases, forest maps, etc." PLU–B–000052. They then made their first cut, "avoid[ing] routes on private land with no right of way, routes where motorized use would conflict with existing uses, and routes with measurable resource impacts." PLU–B–000058. Next, Defendants asked the public "to identify which of the routes and areas should become part of the proposed action, the type of use that each would have, and routes to be considered for dispersed recreation access." Id.

Plaintiffs have identified seventeen routes that they complain did not receive "on the ground" verification, but they do not identify what information would have been discovered by such verification. Pls.' Resp. & Reply, at 2 n.1. Defendants analyzed all seventeen of those routes, and provided reasons for their exclusion. See PLU–D–012271 to –012273. Plaintiffs have not shown that their requested "on the ground" verification would have discounted the factual bases for those exclusions.[5] Indeed, courts in this District have previously rejected similar attacks on the adequacy of the Forest Service's data in other cases.

See, e.g., Friends of Tahoe Forest Access v. U.S. Dep't of Agric., Tr. of Proceedings Held on Nov. 22, 2013 at 65, No. 2:12–cv–01876–JAM–CAD (E.D. Cal. Dec. 19, 2013) (rejecting a claim based on a failure to provide "site-specific analyses" of each excluded route because "the defendants screened and analyzed all the unauthorized routes, and included a rational explanation why each route was not proposed for addition to the NFTS"); Ctr. for Sierra Nevada Conservation v. U.S. Forest Serv., 832 F.Supp.2d 1138, 1160 (E.D. Cal. 2011) (finding reasonable the Forest Service's reliance on GIS data and "field assessments" of only those "unauthorized routes proposed for designation").

Plaintiffs also contend that "[e]ven if [Defendants] had adequately verified [their] data," the "first cut" did not comport with the Travel Management Rule because it did not consider the enumerated factors contained in that Rule. Pls.' Resp. & Reply, at 2–3 (citing 36 C.F.R. § 212.55(a)). However, the Travel Management Rule only requires such factors to be considered when "designating National Forest System roads, National Forest System trails, and areas on National Forest System lands for motor vehicle use." 36 C.F.R. § 212.55(a) (emphasis added). In its "first cut," Defendants did not designate any routes as part of the NFTS, but instead took a first pass at identifying which routes would be considered for designation. Accordingly, the factors articulated in the Travel Management Rule were inapplicable to the 697 miles of unauthorized routes that did not make the "first cut." Cf. Klamath-Siskiyou Wildlands Ctr. v. Graham, 899 F.Supp.2d 948, 964 (E.D. Cal. 2012) (rejecting the plaintiff's contention that the Forest Service needed to conduct

---

**5.** Plaintiffs point to two maps that they claim show the data used by Defendants was inaccurate, see Pls.' Resp. & Reply, at 2, but Plaintiffs do not identify any routes that were eliminated by this supposedly inaccurate data, let alone that on-site analysis would have corrected these supposed inaccuracies.

a "comprehensive environmental assessment of the entire NFTS" because the project was limited to whether it "should allow motorized use on previously unauthorized roads").

## B. Defendants Considered a Reasonable Range of Alternatives

■ Plaintiffs similarly claim that the Defendants' "first cut" methodology prevented Defendants from considering a reasonable range of alternatives, as required by NEPA. Pls.' MSJ, at 16–17. Plaintiffs rely primarily on a document promulgated by the Council on Environmental Quality ("CEQ"), see Pls.' MSJ, at 17–18, which states: "An appropriate series of alternatives might include dedicating 0, 10, 30, 50, 70, 90 or 100 percent of the Forest to wilderness," Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,027 (Mar. 23, 1981) [hereinafter Forty Questions]. By only considering about 33% of the unauthorized routes, the Forest Service did not consider "a reasonable range of alternatives under the CEQ [document]." Pls.' MSJ, at 18. However, even if the CEQ document is " 'entitled to substantial deference' as an interpretation of NEPA," Block, 690 F.2d at 769 (quoting Andrus v. Sierra Club, 442 U.S. 347, 357, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979)), Plaintiffs overstate its import and application here.

What is considered a reasonable range is determined in light of the purpose and need of the project. See Cent. Sierra Envtl. Res. Ctr. v. U.S. Forest Serv., 916 F.Supp.2d 1078, 1090 (E.D. Cal. 2013). To this point, the CEQ document relied on by Plaintiffs states, "What constitutes a reasonable range of alternatives depends on the nature of the proposal and the facts in each case." Forty Questions, supra, at 18,-027. The purpose and need here was "for regulation of unmanaged motor vehicle travel by the public," and "for limited additions to the National Forest Transportation system to[ p]rovide motor vehicle access to dispersed recreation opportunities ... [and to p]rovide a diversity of motorized recreation opportunities." PLU–B–000014. It was not, as Plaintiffs contend, "to determine how many of the unclassified 1,107 miles would be added to the Plumas National Forest Travel Management Plan." Pls.' MSJ, at 19. Accordingly, the example provided by the CEQ is of limited value here where there is no 100 or 0 percent option to fulfill the goals of the project.

The purpose of a reasonable range of alternatives is to "foster[ ] informed decision-making and informed public participation." Headwaters, Inc. v. Bureau of Land Mgmt., 914 F.2d 1174, 1180 (9th Cir. 1990) (quoting Block, 690 F.2d at 767). That purpose was fulfilled here in the alternatives Defendants analyzed. Defendants considered four action alternatives, eleven other alternatives in less detail, and a no-action alternative. PLU–B–000062, –0000067, –000081 to –000085. Comments from the public formed the impetus for almost all of the eleven alternatives not analyzed in detail, and Defendants gave reasons for why each was not analyzed in more depth. See PLU–B–000081 to –000085; 40 C.F.R. § 1502.14 ("[F]or alternatives which were eliminated from detailed study, [agencies shall] briefly discuss the reasons for their having been eliminated."). In creating the four action alternatives, Defendants responded to public input, leading to the surveying of an additional 35 miles of routes and the consideration of 155 miles of routes that were not originally included in the Forest Service's original suggested routes. PLU–B–000085.

The range of alternatives fostered informed decision-making and informed public participation, and so Defendants ful-

filled the requirements of NEPA. Cf. Friends of Tahoe Forest Access v. U.S. Dep't of Agric., 641 Fed.Appx. 741, 744 (9th Cir. 2016) ("Plaintiffs have failed to show how considering additional alternatives would have fostered more informed decision making than the alternatives that the Forest Service analyzed and rejected based on the adverse environmental impacts it perceived."). Plaintiffs have failed to show that Defendants acted arbitrarily or capriciously in considering action alternatives that were confined to 361 miles of the unauthorized routes.

### C. The Prohibition of Non-Highway Legal Vehicles from Maintenance Level Three Roads Was Reasonable

■■■■ Plaintiffs argue that Defendants violated their own procedures in prohibiting Off-Highway Vehicles ("OHVs") from all Maintenance Level Three roads in the Forest because they "failed to provide data that demonstrates that the Maintenance Level 3 ban is the minimum restriction required to provide for user safety." Pls.' MSJ, at 15. Plaintiffs contend that Defendants' procedures required them "to perform appropriate engineering analyses" before making such a determination. Id. Because agencies must follow their own procedures, they conclude, the prohibition on OHVs from Maintenance Level Three roads was unlawful. Id.; see also Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Plaintiffs, however, again misconstrue Defendants' documents.

None of the documents Plaintiffs cite stand for the proposition that an engineering analysis must be conducted before prohibiting OHVs from Maintenance Level Three roads. They all, in fact, state almost the entirely opposite proposition: Such analyses need to be conducted when allow-ing OHVs on Maintenance Level Three roads. E.g., PLU-D-00008356 ("The analysis that supports a decision to allow mixed use on Maintenance Level 3–5 roads must consider the probability and severity of accidents." (emphasis removed)). Thus, the Forest Service did not act unlawfully because it did not contravene its own procedures.

Plaintiffs also contend that the Forest Service "does not generally prohibit mixed use" on Maintenance Level Three roads, but instead that "such use normally depends on state traffic law." Pls.' Resp. & Reply, at 7–8 (citing 36 C.F.R. § 212.5(a)(1)). Thus, they continue, Defendants' default position of prohibiting OHVs from such roads derives from their interpretation of state law, and that interpretation deserves no deference. Id. at 8. Plaintiffs, however, ignore a key exception to the relevant regulations. State traffic laws apply only to the extent they are not "in conflict with" the Forest Service's designations and authority to restrict "use by certain classes of vehicles or types of traffic." 36 C.F.R. § 212.5(a). Though Defendants may have relied in part on state traffic laws to determine what kinds of vehicles should be allowed on Maintenance Level Three roads, see Defs.' Opening Br., ECF No. 37–1, at 14, their authority to designate which kinds of vehicles may be used on which kinds of roads does not depend on state law. Plaintiffs have therefore not demonstrated that the prohibition of OHVs from all Maintenance Level Three roads is arbitrary or capricious or otherwise unlawful.

### D. Defendants Properly Coordinated with Local Governments Under NEPA and the Travel Management Rule

■■■■ NEPA requires agencies to "cooperate with State and local agencies to

the fullest extent possible to reduce duplication between NEPA and comparable State and local requirements." 40 C.F.R. § 1506.2(c). An FEIS must also "include discussion of ... [p]ossible conflicts between the proposed action and the objectives of Federal, regional, State, and local ... land use plans, policies[,] and controls." Id. § 1502.16. The Travel Management Rule, too, requires that "[t]he responsible official ... coordinate with appropriate Federal, State, county, and other local governmental entities ... when designating National Forest System roads." 36 C.F.R. § 212.53.

Plaintiffs argue that Defendants violated these requirements by failing to coordinate with Butte and Plumas Counties and by failing to address conflicts with certain of the Counties' road and transportation plans. Pls.' MSJ, at 20–21. County roads that lead into the Plumas National Forest allow OHVs, and Plaintiffs claim that the prohibition of such vehicles on Maintenance Level Three roads conflicts with the Counties' policies. Id. at 23. Plaintiffs also claim that the DEIS and FEIS failed to consider "the connection between Plumas National Forest routes and the road system of the Counties" and "the opportunities for County roads to serve as connectors between Plumas National Forest routes for motorized vehicle use." Id. Plaintiffs have again failed to show that Defendants did not fulfill their obligations under NEPA or the Travel Management Rule.[6]

First, Plaintiffs claim that Defendants' engagement with the Counties was no "more than the general public notice and comment afforded all interested parties under the Travel Management Rule and NEPA." Pls.' Resp. & Reply, at 8. Defendants, however, did not limit the Counties' participation to the general ability of the general public to participate in the notice and comment process. The record shows that four formal meetings and six informal meetings took place between Defendants and Plumas County officials. PLU–A–000057; see also PLU–E–000058 (list of informal meetings with Plumas County officials). Similarly, Defendants "offered to set up private, individual meetings with two Butte County Supervisors." Id. Defendants also corresponded with County officials about the project. See, e.g., PLU–D–007890 (exchanging maps via email).

Second, Plaintiffs complain that Defendants did not "consider the opportunities for County roads to serve as connectors between Plumas National Forest routes for motorized vehicle use." Pls.' MSJ, at 23. This, however, is also belied by the record. For example, in response to a comment to the DEIS, Defendants stated that "we will utilize county roads as connectors" and that county roads would appear on the ultimate Motor Vehicle Use Map. PLU–B–001223. Plaintiffs' objection is therefore more properly characterized as substantive. They object to the Forest Service's decision to "institute[ ] an across-the-board ban on off-road vehicle use on Maintenance Level 3 roads in the Forest, even though the Counties allow off-road vehicle use on County roads of a similar design, surface type, and maintenance level." Pls.' MSJ, at 23. The Forest Service's ultimate decision, though, does not demonstrate a lack of coordination or a lack of

---

**6.** Plaintiffs acknowledge that the Travel Management Rule does not define "coordination" and so rely on NFMA's coordination requirements at the time. See Pls.' Resp. & Reply, at 8–9. As noted above, Plaintiffs have not pleaded an NFMA claim, so the precise terms of the NFMA regulations carry little, if any, weight here. It does not follow that NEPA or the Travel Management Rule incorporates NFMA's substantive requirements simply because the NFMA regulations contain a section entitled, "Coordination with other public planning efforts." 36 C.F.R. § 219.7 (1983).

consideration of the Counties' priorities. It only evinces a disagreement between the Forest Service and the Counties as to how the project should be implemented. As NEPA and the Travel Management Rule provide only procedures that Defendants must follow, such substantive disagreements are not actionable under either.

Finally, Plaintiffs claim insufficient coordination on the basis that the FEIS lacks any description of "the consistency, or conflicts of, the Forest Service's preferred alternative with local plans, policies, or controls." Pls.' MSJ, at 24. Defendants argue that Plaintiffs have failed to identify any inconsistency between the Forest Service's decisions and the Counties' plans, and only show that the Counties' preferences do not align with the Forest Service's. Defs.' Opening Br., at 18. Defendants have the better argument. Plaintiffs do not identify any plans or policies that conflict with the Motorized Travel Management Plan. For example, Plaintiffs show that Butte County opposed aspects of the Motorized Travel Management Plan because it "will have a significant negative impact on the area's transportation and circulation system." Pls.' Resp. & Reply, at 9–10 (quoting PLU–A–000321). Merely because the Motorized Travel Management Plan has a "significant negative impact on the area's transportation and circulation system," however, does not demonstrate any conflict between the Motorized Travel Management Plan and the County's policies or plans. Plaintiffs also indicate that Plumas County objected to the elimination of "many routes intersecting the Mr. Hough Road (a Plumas County Road)." Id. at 10 (quoting PLU–A–000151). That Plumas County might have preferred that such roads be designated part of the NFTS does not demonstrate a conflict with a County plan or policy that required comment or discussion in the FEIS.

### E. Defendants Took the Required "Hard Look" at the Impacts on the Human Environment

Next, Plaintiffs claim that Defendants failed to analyze the Motorized Travel Management Plan's impact on "the human environment," that is, its "economic or social ... effects." Pls.' MSJ, at 24 (quoting 40 C.F.R. § 1508.14). Specifically, Plaintiffs claim that "[t]he Forest Service failed to take into account the fact that many Forest users cannot access Forest areas ... without first using motorized vehicles to reach those areas," failed to account for the "impacts that the drastic reduction in motorized vehicle access would have on the ability of the public to access the forest to obtain food and fuel," and failed to analyze how the Plan "could impact tourism and recreational opportunities in Plumas County." Id. at 25–26.

Once again, Plaintiffs' claims are belied by the record. Contrary to Plaintiffs' assertions, Defendants addressed the public's ability to cut firewood. See PLU–B–001216 ("It is believed that fuel wood cutting will not be significantly [a]ffected by the reduced amount of access. The public will find sufficient areas to meet their firewood needs."). The Forest Service also addressed impacts to dispersed recreation. See, e.g., PLU–B–000097 (showing the accessibility of dispersed recreation under the four action alternatives, which ranged from 75 to 92 percent). Finally, the FEIS explicitly analyzed both the economic impact of the Motorized Travel Management Plan as well as its impact on recreational opportunities. See PLU–B–000564 to – 000577.

### F. Defendants Adequately Responded to Commends During the Public Comment Period

NEPA requires that an FEIS address comments by the following means, as appropriate:

(1) Modify alternatives including the proposed action.

(2) Develop and evaluate alternatives not previously given serious consideration by the agency.

(3) Supplement, improve, or modify its analyses.

(4) Make factual corrections.

(5) Explain why the comments do not warrant further agency response, citing the sources, authorities, or reasons which support the agency's position and, if appropriate, indicate those circumstances which would trigger agency reappraisal or further response.

40 C.F.R. § 1503.4. "An agency need only respond to 'significant comments,' those which, 'if adopted, would require a change in the agency's proposed rule.'" Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1404 (9th Cir. 1995) (quoting Am. Mining Cong. v. Envtl. Prot. Agency, 965 F.2d 759, 771 (9th Cir. 1992)).

Plaintiffs contend that Defendants failed to meet these requirements with respect to several comments made during the notice and comment process. Specifically, they contend that Defendants failed to adequately respond to (1) comments "that the Forest Service's proposed action would have negative impacts on the variety of motorized vehicle riding experiences" in the Forest; (2) several comments made by CORVA; (3) "comments made by Butte County asking the Forest Service to consider non-paved County maintained roads as mixed use roads;" or (4) Plumas County's comment in opposition to the Forest Service's decision to prohibit "limited vehicle use near designated routes." Pls.' MSJ, at 26–27.

The administrative record, however, shows that all the identified comments were replied to appropriately. First, regarding the alleged failure to address the variety of experiences available for motorized recreation, Defendants responded to the comment directly, determining that "[t]he abundance of System Roads will provide ample opportunity for the motorized user." PLU–B–001168. The FEIS also addressed the impact of the action alternatives on motorized recreation, specifically concluding that the preferred alternative "would have a beneficial effect on motorized opportunities." PLU–B–000110; see also PLU–B–000094 (explaining that the FEIS used mileage as "an indicator of the number and types of experiences available for motorcycles, ATVs, and 4WDs in each alternative").

Second, Defendants responded appropriately to comments made by CORVA. For the most part, Plaintiffs generally object that the Forest Service's responses simply "acknowledged" CORVA's comments. See Pls.' MSJ, at 27. They specifically identify only one comment in which CORVA critiques the amount of input the Forest Service received from the public as "not a statistically significant sample." PLU–B–001582 to –001583. To this comment, the Forest Service responded: "Comment acknowledged; does not provide new information." Id. CORVA's comment was not a "significant comment" that required anything more in response. It essentially only expressed dissatisfaction with the number of people who provided comments and participated in the rule-making process. It did not provide solutions to the perceived problem or provide new information. Therefore, it was not a comment that, "if adopted, would require a change in the agency's proposed rule." Idaho Farm Bureau Fed'n, 58 F.3d at 1404 (quoting Am. Mining Cong., 965 F.2d at 771).

Third, Defendants adequately responded to Butte County's request to consider non-paged County maintained roads as mixed use roads. Defendants responded, "[W]e will utilize county roads as connectors." PLU–B–001223.

Finally, Defendants also addressed Plumas County's opposition to limiting parking to within one vehicle length from the edge of the trails or roads. Plumas County urged Defendants to not take that course of action, and Defendants correctly noted that such a limitation is permitted under the Travel Management Rule. PLU–B–001235 to –001236; see also 36 C.F.R. § 212.51(b) ("In designating routes, the responsible official may include in the designation the limited use of motor vehicles within a specified distance of certain forest roads or trails where motor vehicle use is allowed....").

Plaintiffs have only identified dissatisfaction with the ultimate decisions made by Defendants in adopting the Motorized Travel Management Plan. All the identified comments received adequate responses as required under NEPA.

## G. NEPA Did Not Require a Supplemental Draft Environmental Impact Statement

■ NEPA requires that agencies prepare supplements to "either draft or final environmental impact statements if ... [t]he agency makes substantial changes in the proposed action" or if "[t]here are significant new circumstances or information." 40 C.F.R. § 1502.9(c)(1). In either case, the changes must be "relevant to environmental concerns." Id. Plaintiffs claim that eight changes that were "presented for the first time in the FEIS" demanded such a supplement:

(1) restrictions on routes according to season of use, (2) implementation of a one-fourth mile buffer for wildlife nests, (3) implementation of a one-half mile buffer for private land "quiet recreation," (4) the closure of additional roads and trails because the analysis of potential impacts to the California red-legged frog from the continued use of these roads was not completed in a timely manner, (5) 47% of single-track routes in

the French Creek area were closed, (6) the Sly Creek area routes were eliminated, (7) 13 National Forest Transportation System routes were eliminated from the map of available routes in the French Creek area, and (8) the Law Enforcement Section (Appendix I) was added.

Pls.' MSJ, at 28 (citations omitted). Plaintiffs claim that these each were substantial changes to the project. Plaintiffs, however, are incorrect.

Six of Plaintiffs' objections concern the Forest Service's decision to either not include or limit use of certain trails when incorporated in the NFTS. Plaintiffs do not demonstrate that the non-inclusion of these trails substantively affected the Motorized Travel Management Plan. Instead, the modifications are all "minor variation[s]" that fall "qualitatively within the spectrum of alternatives." Great Old Broads for Wilderness v. Kimbell, 709 F.3d 836, 854 (9th Cir. 2013) (quoting Forty Questions, supra, at 18,035). The Forest Service considered adding between zero and 361 miles to the NFTS. PLU–B–000025 to –000027. The elimination of a small percentage of those miles from the FEIS falls within the spectrum of the considered alternatives. Cf. Russell Country Sportsmen v. U.S. Forest Serv., 668 F.3d 1037, 1046–47 (9th Cir. 2011) (finding that "several trail closures that were not included in any of the alternatives discussed in the DEIS" were " 'minor variation[s]' that were 'qualitatively within the spectrum of alternatives that were discussed in the draft [EIS]' " (alterations in original)).

The remaining two objections are similarly without merit. Plaintiffs imply, without support, that the Forest Service used a new measurement that "play[ed] a key role in the final impact statement's assessment of the recreational effects of each of the alternatives," by not defining the term

"quiet recreation" in the DEIS. Pls.' Resp. & Reply, at 12. However, the term "quiet recreation" in the FEIS is merely a new label for the concept of "non-motorized recreation activities displaced by proposed motor vehicle use." PLU–B–000705 to – 000706. Plaintiffs provide no support for their assertion that this label change effected any substantial change to the Forest Service's analysis. Finally, Plaintiffs' objection to the Law Enforcement appendix is similarly conclusory and without support. As Defendants note, the addition was "in response to a public comment for law enforcement issues to be addressed" and Plaintiffs have failed to demonstrate that the addition affected the Forest Service's analysis. Defs.' Opening Br., at 28; see also Russell Country Sportsmen, 668 F.3d at 1045 ("An agency can modify a proposed action in light of public comments received in response to a draft EIS.").

### H. Defendants Were Not Required to Prepare a Cumulative Impacts Statement for Effects Beyond the Borders of the Forest

"NEPA requires that where several actions have a cumulative or synergistic environmental effect, this consequence must be considered in an EIS." City of Tenakee Springs v. Clough, 915 F.2d 1308, 1312 (9th Cir. 1990) (citing Sierra Club v. Penfold, 857 F.2d 1307, 1320–21 (9th Cir. 1988)). Plaintiffs allege that limiting the cumulative impacts analysis of the Motorized Travel Management Plan to the borders of the Plumas National Forest made its analysis deficient. Pls.' MSJ, at 29–30. However, "identification of the geographic area" of such an analysis "is a task assigned to the special competency of the appropriate agencies." Kleppe, 427 U.S. at 414, 96 S.Ct. 2718 (1976). Plaintiffs' unsupported assertion that application of the Travel Management Rule to unnamed nearby national forests "will exacerbate all

the impacts otherwise attributable to" its application to the Plumas National Forest, Pls.' Resp. & Reply, at 15, is not sufficient to render the Forest Service's discretionary choice arbitrary and capricious, see Friends of Tahoe Forest Access, 641 Fed. Appx. at 744 ("we have affirmed that an agency's decision to use a project's boundaries as the geographic scope of its cumulative effects analysis is reasonable, even where a project may have cumulative impacts in a broader geographic area.").

### CONCLUSION

For the reasons given above, Plaintiffs' Motion for Summary Judgment, ECF No. 31, is DENIED and Defendants' Cross-Motion for Summary Judgment, ECF No. 37, is GRANTED. Furthermore, Defendants' Motion to Strike, ECF No. 36, is GRANTED IN PART and DENIED IN PART. The matter having now been concluded in its entirety, the Clerk of Court is directed to close the file.

IT IS SO ORDERED.